UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

           Case No. 16-20199

    Plaintiff,

vs.             Hon. Sean F. Cox

DEANDRE ELLIOTT,

    Defendant.
_____/

**United States' Response Opposing the Defendant's
Motions for Compassionate Release (Doc. #60, Doc. #71)**

After serving almost 21 months of the 24 month sentence imposed by this Court on November 2, 2016 for making false claims to the IRS, ELLIOT was released to supervised release on March 16, 2018. (R.52: Judgment; Exh.1: BOP Public Information). On June 17, 2019, the probation department petitioned this Court for a supervised release violation warrant, alleging various violations of the conditions of supervision including arrests for larceny on May 25 and June 1, 2019. (R.55: Supervised Release Violation Petition). The Court issued the warrant, ELLIOTT ultimately admitted violating a condition of supervised release, and, on November 15, 2019, the Court terminated supervision and sentenced him to serve ten months in the custody of the

1

Bureau of Prisons. (R.65: Judgment for Revocation of Supervised Release). Upon ELLIOTT's urging, the Court allowed him to leave the courthouse to attend to a personal matter, but ordered him to turn himself into the United States Marshall's Service by 1:00pm the same day. (*Id.*). ELLIOTT failed to appear as ordered, and the Court issued another warrant for his arrest. (R.66: Warrant).

ELLIOTT was taken into federal custody to begin serving his 10 month custodial sentence on March 19, 2020. (Exh. 1: BOP Public Information; R.71: ELLIOTT Letter to Court, 8/4/20). He is currently housed in the Detention Center at FCI Milan, and his expected release date is January 17, 2021. (*Id.*). Having now served a little over six months of his ten-month term, ELLIOTT moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His motions should be denied.

**I. The Court should dismiss ELLIOTT'S motion for compassionate release because he has not exhausted his administrative remedies.**

The Court must dismiss ELLIOTT's motions, because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018

amended the statute, permitting defendants to move for it too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). But the provision permitting a defendant-initiated motion includes an exhaustion requirement. Id. A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). As the Sixth Circuit recently held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. Id. at 832–36; accord *United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

ELLIOTT did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement. The BOP reports that FCI Milan's warden received no such request despite ELLIOTT's submission of a copy of an email to the warden requesting a status update of a request he purportedly sent. This "proof" is unpersuasive. If ELLIOTT, in fact,

3

made such a request, he could have provided a copy with the Court. For now, the BOP information contradicts ELLIOTT's claim, and ELLIOTT offered no explanation for his inability to submit the original request to the Court. ELLIOTT's motion for compassionate release should therefore be dismissed for failure to exhaust. *Alam*, 960 F.3d at 836.

## II. The Court should deny ELLIOTT's motion for compassionate release because he does not qualify.

Even if the Court gives ELLIOTT the benefit of the doubt and finds that he exhausted his administrative remedies, ELLIOTT's motions for a reduced sentence should still be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

To qualify for compassionate release, a defendant must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well as developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t). The compassionate-release statute thus permits a sentence reduction only when "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

5

Because the Sentencing Commission fulfilled Congress's directive in USSG § 1B1.13, compliance with that policy statement is mandatory for any defendant seeking compassionate release under § 3582(c)(1)(A). The Supreme Court has already reached the same conclusion for compliance with USSG § 1B1.10 under 18 U.S.C. § 3582(c)(2), based on the statutory language there. *Dillon v. United States*, 560 U.S. 817, 827 (2010). And the statutory language in § 3582(c)(1)(A) is identical to the language in § 3582(c)(2). *Compare* § 3582(c)(1)(A) (requiring that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"), *with* § 3582(c)(2) (same). When Congress uses the same language in the same statute, it must be interpreted in the same way. *United States v. Marshall*, 954 F.3d 823, 830 (6th Cir. 2020). In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014) (citing *Dillon*, 560 U.S. 817); *accord United States v. Saldana*, 807 F. App'x 816, 819–20 (10th Cir. 2020).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend

the substantive requirements for release. *Saldana*, 807 F. App'x at 819–20. Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in [Program Statement 5050.50](). USSG § 1B1.13 cmt. n.1.

Here, ELLIOTT has not even alleged any circumstances that remotely satisfy any of these conditions. ELLIOTT's actual motion ["the motion"] does not even mention his physical health or any apprehension about health risks presented by his incarnation or associated with the pandemic. (R.69: Motion for Compassionate Release, PID 339-41). Although ELLIOTT sent the Court a letter on August 4, 2020 ["the letter"] containing unsubstantiated allegations that he had come into contact with an inmate "who tested positive for Covid-19" during his transfer from the Midland County Jail to the Milan Detention Center, and expressing concern for his health, these allegations and concerns

7

are never mentioned in the motion filed on September 17, 2020. (R.71: Letter at Page ID 346; R.69: Motion). However, even when the letter is construed as another motion for compassionate release, it, too, must be denied. The letter claims no personal health issues or conditions of confinement that would put ELLIOTT at higher risk of contracting Covid-19 or experiencing more severe symptoms if he did. (R.71). Indeed, ELLIOTT is only 37 years old and is in good health, according to records of the BOP (available to the Court upon request).

Nor does ELLIOT suggest in either the motion or the letter that he has lost a caregiver for his minor children or any other reason that could be deemed "extraordinary and compelling" within the meaning of USSG § 1B1.13 cmt. n.1. Rather, ELLIOTT's motion asserts that on July 2, 2019 (while on bond for his supervised release violation petition) he was the victim of an armed robbery, testified against the perpetrator at a preliminary examination, is concerned for the safety of his family as a consequence because his son's mother has been intimidated by the perpetrator and his friends, and "does not want [the perpetrator] to go free because of his absence." (R.69: Motion at PID 340). These circumstances are wholly insufficient for compassionate release. They

do not present "extraordinary and compelling" reasons to justify any reduction in sentence. ELLIOTT seems not to realize that he will not be absent from his assailant's trial because he is incarcerated. Quite the contrary, the prosecutor will know exactly where to find him and have him transported to Wayne County when the time comes. Moreover, given the pandemic, and his assailant's bond status (ELLIOTT claims he is free on bond), it is highly unlikely that the trial will be held before ELLIOTT's January 17, 2021 expected release date. Additionally, the personal protection of his family is not included among the circumstances enumerated in USSG § 1B1.13 cmt. n.1. And even if it were, ELLIOTT does not explain why other members of his family, her family, neighbors, the Detroit Police Department, the Wayne County Sheriff's Department, the Wayne County Prosecutor and/or the Michigan State Police could not contribute to the safety and security of ELLIOTT's family while he is incarcerated. ELLIOTT's motion for compassionate release should be denied because he simply does not qualify for this extraordinary relief.

### III. The Court should deny ELLIOTT's motion for compassionate release because he is a danger to the community.

Even if ELLIOTT could cite an extraordinary and compelling reason for release, he remains ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As with the other requirements in § 1B1.13, this prohibition on releasing dangerous defendants applies to *anyone* seeking compassionate release. 18 U.S.C. § 3582(c)(1)(A) (requiring that release be "consistent with" § 1B1.13); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (confirming that a released defendant must "not represent a danger to the safety of any other person or the community"). Although a court must also evaluate the defendant's dangerousness when balancing the § 3553(a) factors, dangerousness alone is a *per se* bar to release under USSG § 1B1.13(2). *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020); *United States v. Oliver*, No. 2:17-cr-20489, 2020 WL 2768852, at *7 (E.D. Mich. May 28, 2020).

An evaluation of dangerousness under § 3142(g)—which § 1B1.13(2) references for its dangerousness determination—requires a comprehensive view of community safety, "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). Indeed, even when considering *pretrial* detention under § 3142(g), "[t]he concept of a defendant's dangerousness encompasses more than merely the danger of harm involving physical violence." *United States v. Williams*, No. 20-1413, 2020 WL 4000854, at *1 (6th Cir. July 15, 2020) (citing *United States v. Vance*, 851 F.2d 166, 169–70 (6th Cir. 1988)). That reasoning applies even more strongly post-judgment, when the defendant's presumption of innocence has been displaced by a guilty plea or jury's verdict and when "the principle of finality" becomes "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Section 1B1.13(2) is thus a significant hurdle to release. It bars the release of violent offenders. It bars the release of most drug dealers, "even without any indication that the defendant has engaged in violence." *United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a

11

danger to the community."); *Knight*, 2020 WL 3055987, at *3. It bars the release of defendants whose offenses involved minor victims or child pornography. *See United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *3 (6th Cir. July 8, 2020). It also bars the release of many "non-violent" offenders, such as defendants who were involved in serial or significant fraud schemes or otherwise present a danger to the community in some respect. *See Stone*, 608 F.3d at 948 n.7; *United States v. Israel*, No. 17-20366, 2017 WL 3084374, at *5 (E.D. Mich. July 20, 2017) (recognizing that "economic harm may qualify as a danger" foreclosing release); *United States v. Persaud*, No. 05-CR-368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (citations omitted) ("Judge Homer held, and Defendant disputes, that economic harm qualifies as a danger within the contemplation of the Bail Reform Act. This Court agrees with Judge Homer."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) (citations omitted) ("There can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act.").

As the Court will recall, ELLIOTT's original case involved a fraud scheme that was both prolonged and expansive, involving the use of the personal identification information of others to file hundreds of false tax returns over several years claiming and, in some cases, receiving bogus refunds. (PSR at ¶¶ 12-19). ELLIOTT demonstrated, even before this case was charged, a willingness to flaunt the law and judicial orders, as seen in his repeated failures to appear at scheduled court dates, even after being picked up on warrants for failing to appear (PSR ¶¶35-36), his persistence in driving while his license was suspended (PSR ¶¶33-35; 37-39), and violation of the terms of probation (PSR ¶36). In addition, ELLIOTT demonstrated an unwillingness to follow court orders and the law at every stage of this case. His failure to appear for a status conference resulted in this Court's revocation of bond before trial. (*See* Docket Sheet: Minute Entries dated 6/20, 22/16). The ten month sentence he now asks this Court to reduce was the result of ELLIOTT's continuation of criminal behavior (two separate episodes of felony larceny) while on judicial supervision, and otherwise violating terms of his supervise release. (R.55: Supervised Release Violation Petition; R.65: Judgment). And, as if to put an exclamation point on his contempt

13

for the rule of law and orders of the Court, when he was allowed to remain free for several hours after his sentence for the supervised release violations, the defendant absconded, resulting in the issuance of another warrant for his arrest. (R.66: Warrant)

Predicting criminal behavior is difficult at best. Any human being can turn the trajectory of his/her life on a dime. There is, however, no evidence that ELLIOTT has turned his life around, and his history strongly suggests that, if released, he would endanger the community. § 1B1.13(2) therefore prohibits reducing his sentence under § 3582(c)(1)(A).

## Conclusion

ELLIOTT's motions should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
U.S. Attorney

/s/ Craig A. Weier
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9678
Email: craig.weier@usdoj.gov

Dated: October 13, 2020

Certificate of Service

I certify that on October 13, 2020, I electronically filed this response for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, and sent a copy to the defendant by first class mail through the United States Postal Service addressed to:

>  DeAndre Elliott
>  Inmate #54258-039
>  Federal Detention Center
>  Milan FCI
>  PO Box 1000
>  Milan, Michigan 48160

>  /s/ Craig A. Weier
>  Assistant United States Attorney
>  United States Attorney's Office
>  Eastern District of Michigan
>  211 West Fort Street, Suite 2001
>  Detroit, MI 48226
>  Phone: (313) 226-9678
>  Email: craig.weier@usdoj.gov